case on the argument calendar, shown on the calendar is Doe v. United States, it's really Kimberly v. United States. Doe is the applicant for intervention. In any event, Doe is the applicant for intervention. In any event, Doe is the applicant for intervention. Robert Manky, I represent the appellant Ann Doe, and I would like to reserve five minutes of time for rebuttal. We have two appeals today, one on the denial of intervention to my client below, and one from the merits of the judgment. And I would like to turn first to the issues that go to the merits of the judgment and are below. And there are three parts to my argument. The first is that this Court's prior decision in the Kimberly case didn't resolve the issues before the Court on this appeal, did not dictate the entry of judgment below. Second, then, presented is the question of how ordinary principles of contract interpretation applied in this case affect the judgment under below, and whether judgment was properly entered on the contracted issue here under ordinary principles of contract interpretation. And then third, even if the contract between the Farmer's Home Administration and Kimberly expressly waived the congressional power to pass the Olympic statute, was that authority delegated to the Farmer's Home Administration by Congress in the early 80s? Because it was not expressly delegated, even if the contract says what Kimberly has argued that it says, nevertheless, injunctive relief is not appropriate, and the only remedy available to Kimberly is money damages. Let me ask you this. After our opinion in Kimberly 1, what was the district court's mandate? How do you understand the district court's mandate when it was returned? Your Honor, Kimberly 1 raised the ---- That that didn't dictate a judgment in favor of Kimberly. No, Your Honor. The government ---- But in your view, did Kimberly 1 mean then, what was there for the ---- What did the district court have to decide, putting aside the settlement, what did the district court have to decide in order to enter a judgment in favor of Kimberly? Let me answer that in two ways. First, the government moved to dismiss very early in the case and raised only two defenses. First, that sovereign immunity wasn't waived. And second, that the unmistakability doctrine applied and barred Kimberly's claims. And those were the only issues in front of the first panel. The first panel ruled against the government on both of those issues, but then remanded to the district court to entertain the case with any other ---- Well, the district court is going to look at our opinion and is going to follow what we said. Now, why did the district court ---- What you're telling us is that the district court misunderstood our holding in Kimberly 1. And I want to know in what way or how. The district court ruled that ALIPA does not apply. And that is a misapprehension of what the first panel said. The ruling of the first panel was that ALIPA was not a sovereign act within the meaning of the sovereign acts doctrine. I think it's either the third or the fourth special defense discussed in the Winstar decision. That doesn't mean that ALIPA is null and void, that it's not an act of Congress. And so the mistake ---- But it didn't apply in this particular circumstance, though, didn't it? Isn't that what the panel opinion said? I don't believe the panel opinion said it didn't apply. It said that ALIPA ---- Well, what's the effect of the panel opinion? No, Your Honor. Put it that way. Well, the effect of the panel opinion, only because the government had raised an unmistakability defense to a contract action. But that doesn't mean that ALIPA is not a validly enacted Federal statute that is the law of the land. And just to illustrate ---- Was it possible that the panel opinion only applied to those ---- to those contracts that had been issued before ALIPA passed? I had not thought about that ---- that distinction. I don't think that distinction is material to the argument we're making. What we're suggesting is that the government cannot raise ALIPA ---- it cannot raise an unmistakability doctrine defense to a contract action brought under ALIPA. But that doesn't mean the government can't raise any of the other defenses set out in Winstar. Or, indeed, setting aside the special defenses available to the government in contract action, the government simply could have argued that the contract at issue in this case doesn't provide Kimberly with the relief that Kimberly is seeking. And that's our second argument. And I would rely on footnote 24 of Winstar, says in part, if an alleged term could not be discovered under normal standards, meaning normal standards of contract interpretation, there would be no need for an unmistakability doctrine. We have that situation in reverse. The first panel decided that the unmistakability doctrine did not apply. It never turned to the questions of contract interpretation that you would then have to reach, that the district court would then have to reach to enter judgment. And the reason it did that is that the government never raised these arguments. So I'm not suggesting that the panel, you know, that the panel didn't fully dispose of the issues in front of it. The only defenses that the government raised when it ---- Your whole attack on the judgment on the merits. And that is in Kimberly 1, towards the end of the opinion, we said, in the context of federal programs, it appears relatively few loans were affected, perhaps numbering less than 5,000. That's where I got the 5,000. Of these private contracts between the third party trustee and borrowers would be to give the government as contractor powers that private contractor parties lack. Such a result cannot be countenanced because a government in its private contracting capacity cannot exercise sovereign power. Now, when it goes back down to the district court, the district court is sort of stuck with this. Your Honor, construed broadly, that sentence is dicta as to issues just not in front of the court. What I take that sentence to mean is that as a function of the unmistakability doctrine, that the government cannot evade contractual liability categorically by relying on OLIPA. We know from Franconia Associates that the government has to pay money damages for breaching the contracts. It repudiated the contracts that it had pre-OLIPA when it passed OLIPA. And we know that the government is responsible for money damages. That does not mean that the contract between Kimberly and Farmers Home Administration in 1981 entitled Kimberly to be exempted from a subsequent act of Congress. All that it means is that the government breached its contract with Kimberly, but that only begs the question of what the remedy is. And Winstar instructs that you apply normal standards of contractual interpretation to the contract at issue here. So the government so from your perspective, the government breaches its contract with Kimberly. Kimberly can get damages, but the project nonetheless still must remain until there's compliance with OLIPA. That's exactly right, Your Honor. It must remain a 515 program. That's exactly right, Your Honor. If the vice of OLIPA is that Congress engaged in social policy and imposed the cost of that social policy on the developers, then the cure for that vice is to spread those costs to taxpayers through an award of damages so that Kimberly doesn't have to bear the costs of the Section 515 program itself. But what Kimberly is seeking to do here is to opt out of OLIPA and to undo the benefits and protections that tenants like my client received. And there is just simply no authority at all either in Winstar or this Court's prior decision or anywhere else in the case law for that. It's an extraordinary proposition. And I think that there is confusion engendered in a lot of the case law because people are usually suing the government for money damages. So — I want to get back to something more basic. You didn't mention this as one of your three points, but I think this is one of the reasons the government's not here today, and that is that the case has been settled. There's no action pending in the district court. Why isn't this case moot? Why isn't your appeal moot? Your Honor, the case was settled on a settlement dictated by the terms of the judgment entered in the district court. And so if this — Well, it doesn't matter what dictated. It was a voluntary act. It's a settlement. You know, the — it's gone. Your Honor, I respectfully — The case is gone. I respectfully disagree. The case is on appeal. Can we undo the settlement? Your Honor, that's for the district court to decide. All that this Court can do is reverse the judgment entered by the district court and remand. And then there's a question to the district court about the effect of the settlement. Reverse what judgment? Reverse the — Judgment pursuant to the settlement? I don't believe there's a judgment pursuant to settlement. The settlement was post-judgment. All that the government did when it settled was — I thought pursuant to the settlement, it was — the case was dismissed. I'm sorry, Your Honor. I didn't hear the question. I thought the action was dismissed by the district court pursuant to the settlement. Your Honor, the district court entered judgment before the settlement. The government appealed. So everything that Kimberly — the interest that Kimberly has in the property, it has by virtue of the judgment entered by the district court. All that the government could do at that point was drop its appeal. If you reverse the judgment entered by the district court and remand to the district court, presumably the government will then appear in the district court, and it will either say we don't wish to continue fighting this case or — No, there's no controversy anymore between the plaintiff and the defendant. Your — you're a would-be — would-be defendant in the intervention, right? Yes, Your Honor. You want to assert a defense. Is that what you want to do? Yes, Your Honor. But there's no action in which to assert a defense. Your Honor, my client is harmed by the judgment entered by the district court. It's certainly not unusual for — Why don't you just start your own action? Your Honor, we could sue, as Kimberly asked last week, by seeking judicial notice of a complaint filed by tenants against the government. We could sue the government to try to ensure compliance with the APA and ensure compliance with the LIPA. But that doesn't help Ms. Doe, because if this case — if the judgment of the district court is not reversed, Ms. Doe will be evicted. What Kimberly is trying to do is sell the property to a bona fide third-party purchaser, and if Kimberly can transfer the property, I suppose we could then go to the district court on a new action and ask that that whole transaction be undone. I think this Court has jurisdiction over the appeal from the judgment. It's the district court's judgment that harms Ms. Doe. And if the government — if you reverse and remand, the government may come into the district court and say, our settlement was just to drop the appeal, but since the case has been reversed, we're going to continue to litigate. In which case, Ms. Doe and the government will be aligned against Kimberly. Alternatively, the government may say, part of our deal with Kimberly is that we wouldn't litigate this further at all. And in that case, we have a cause of action against the government to try to enforce the terms of a LIPA. All of this happened after the — after the appeals were taken. And so all that we know about this settlement is from what Kimberly has filed in this Court in the first instance. We've had no discovery about this. We don't know anything more about this settlement other than what the Court does. And as an advocate, it makes me very uncomfortable to be — to be arguing the law and facts of a deal that I'm not — that I'm not party to. The proper course is for the court to remand to the district court, for the district court to sort this out. Is there anything stopping you from going down to the district court and filing your own action? Your Honor, I think the district court would defer to this court, because as I say, the — the interest that Kimberly has in the property — Maybe answer my question. Why can't you just go over to the district court? Why can't you file a new complaint? I don't think we — I don't think we get anywhere in the district court. And because Kimberly — Because of Kimberly 1? Kimberly now has clear — no, because of the — of Kimberly — of the district court decision in Kimberly. Kimberly now has clear title to the property. The only impediment to its transferring the property is this Court's stay. There's been a — there's been a reconveyance filed and a satisfaction of judgment filed. Your Honor, I note that some of that was filed after the — the order for stay that we — that we asked this Court to order. And so I'm — I'm a little perplexed about how it can be that this Court can order Kimberly to preserve the status quo ante pending this appeal, and then additional steps are taken in the district court to frustrate my client's ability to appeal. All that we're asking is that the status quo ante be preserved so that the judgment of the district court can be reviewed. I think if this Court reverses the judgment on the merits, the district court can sort out whether — And the satisfaction of judgment were in violation of the stay? In violation of the — Of the stay order issued by this Court. My recollection, and I — and I — I wish I were more certain about this. My recollection is at least some of the steps that you're referring to took place after the stay order. But in any event, there's no doubt in my mind that the district court would have the jurisdiction to unpack this deal and — and return the situation to the — the prior state if the judgment is reversed. Kimberly doesn't have an interest in the property by virtue of a settlement. It has an interest in the property by virtue of the — of the judgment. The settlement — all that the government could do once it settled was drop its appeal. That doesn't give Kimberly clear title. All that it — all that it does is means that the — is that the appeal is dropped. The other argument I want to make on the merits that we only touched on is that the Farmers Home Administration was in no way authorized to waive Congress's power to pass a LIPA. And so even if the contract here contemplated that if Congress passed a statute like a LIPA, that — that Kimberly would not be required to comply with the terms of the statute, that Kimberly would be protected from future statutes. That was a statute that — that the Farmers Home Administration was without the power, without the authority to pass. So what are you seeking to do here? To enjoin? We're — we're defending — Deploying the government from filing a prepayment scheme here unless there's compliance with the LIPA? Is that all you're — Yes, Your Honor. Is that all you're — Yes, Your Honor. We just want the projects to stay in the — in the Section 515 program unless there's compliant with — compliance with the terms of a LIPA. You don't believe that Kimberly could comply with a LIPA? Kimberly could. It chose not to. Instead of trying to comply with the statutory terms, it filed an action to quiet title. So we're defending — and — and you'd have to ask a government lawyer why they chose not to defend this action in the way that we have. But we're defending — I think it has something to do with the way the district court ruled — I mean, the way our — our Kimberly won. I think that they thought they might be making bad law if they — if they came up here again and they have other programs to — to worry about. But we think that the first decision did not dispose of the issues and the defenses that we're raising here. The first Kimberly decision does not discuss the text of the contract at all. And I'll just say, the contract — the contract protects Kimberly in the event that future regulations inconsistent with the expressed terms of the statute are passed by the Farmers Home Administration. It does not say the same thing about congressional enactments.  It says that the government is not bound by certain future laws. It says nothing about Kimberly. There is just no way to look at the contract in this case and conclude that Kimberly bargained to be exempted from a statute by ALIPA. They bargained to be able to prepay. As Holmes says, noted in both the Souter decision and the Scalia decision in Winstar, as Holmes says, that's an obligation on the government's part to insure Kimberly against a situation where it can't prepay. But that does not mean that ALIPA gets ignored, that what happens here is that the government has to — that Kimberly has to be stuck in the system. There was another sort of fundamental — maybe not fundamental, but there was another sort of basic problem here, and that was when you filed the notice of appeal from the judgment. Your Honor, we relied on the Seventh Circuit's position in Synthroid. When the government appealed, we looked at the law and concluded that we could not appeal because we were not a party. But with the government having an appeal pending, we didn't think a contingent notice of appeal was necessary to preserve our position. As soon as we learned that the government was settling and dropping its appeal, we looked at the Synthroid decision and we did what Judge Easterbrook suggested in that decision. Kennedy. Is there any Ninth Circuit court case that you know of that allows you to rely on what the Seventh Circuit did? I know of no case either pro or con. Not yet, right? Not yet. The Brennan case, Your Honor, from the Ninth Circuit in the 70s, which is cited in Kimberly's brief, suggests that the judgment could be vacated in order to award full relief to an intervener in situations like this. But it doesn't reach the question because it decided that the motion for intervene in that context was properly decided in the district court. We've got about two minutes. I would like to reserve it, if I could, Your Honor. Thank you. May it please the court. Robert Bakes for the respondent. Kimberly. Three years ago, this court decided the very issue that the appellant in this action is trying to raise again. The court determined that Lippo was not a sovereign act, and therefore it could not modify Kimberly's contract with the government. And that contract specifically provided that Kimberly could prepay its loan at any time and exit the 515 program. And I'm referring to the loan agreement, which is the excerpts of record tab one, paragraph six, page 19, which says specifically, so long as the loan obligations remain unsatisfied, the partnership shall comply with all appropriate FMHA regulations. This court ruled in Kimberly one that when Kimberly tendered the final balance due on its contract, on its promissory note, it had the absolute right to prepay that and exit the program. That is your decision in Kimberly one. The United States Supreme Court followed your decision, followed the analysis of your Kimberly one decision in Franconia. The very same thing. The issue there was not whether you could get quiet title, which, by the way, I might add parenthetically, is a statutory remedy. They keep saying, well, a government breach, but you're limited to damages. But the Congress has enacted specifically 28 U.S.C. 2410, which says that if we have paid off our contract, we can quiet our title from the government. So you can get equitable relief. Congress has authorized equitable relief. And that was confirmed by the United States Supreme Court in the Union Oil Company, where they granted equitable relief and allowed them to rescind the contract and get their deposit back. And so when the Supreme Court decided Franconia, it used the same analysis that you did. It said the government as a private contracting party cannot pass legislation, which it said when it passes legislation, it is a a repudiation of the contract and the and the the injured party can either sue then or can sue when they actually tender the balance due on the contract and the government refuses to take it. But they use the same analysis that it's not a sovereign act when the government enacts legislation or regulations, which specifically point at a group, a contract or a group of contracts and say, we're going to modify them. Otherwise, as Judge O'Connor said in the oral argument, she said, why would anyone contract with the government if the government all I have to do is pass a statute and they can modify the contract? And I think, as Justice Scalia said, any contract which permitted that would be illusory at best, because the government could modify it at any time. You don't have a contract. And so this court was correct when it decided Kimberly won. Not exactly what the Supreme Court did in the gold cases. What gold in the gold payment cases. They said we won't pay in gold anymore. I don't remember the gold cases, but I do remember Lynch, which was back in 1927 in which they tried to modify the veterans insurance contracts. The Supreme Court said you can't focus on these specific contracts. Now, the issue gets down to whether it's a general and a public purpose. And this Court said specifically in Kimberly won that and the Supreme Court said in Franconi when it was interpreting these precisely same documents that this was not a public or a general purpose. It was, as you said, a narrowly focused statute trying to relieve the government of its obligations under a distinct group of contracts. And you said that is not a sovereign act and the government cannot modify these contracts. And so we do anyway. The district court could have gotten around that. I'm just from I can't think of any. You pose the question. I've often thought, what would have happened if. And they were they petitioned the council for these. Dole petitioned this court for it to file an amicus brief and did when the government petitioned for rehearing. And this court denied the rehearing and rehearing and bank. And the solicitor general, after two extensions, refused to file a certiorari petition of the Supreme Court in Kimberly. Now, had this case gone back to the district court and had the district court granted them permission to intervene and had ruled the way they asked this court to rule, which is just contrary to Kimberly, this court would have been rightfully upset because the district court did not follow your remand order, which you read part of it. The last one is to prevent enforcement of private contracts between third parties. And trustees would give the government as contractor powers that private contracting parties lack. And then you say, quoting from the federal circuit, Yankee Atomic Electric, such a result cannot be countenance because the government in its private contracting capacity cannot exercise sovereign power for the purpose of altering, modifying, obstructing or violating the particular contracts into which it had entered with private parties. It can't do that. Now, your decision in Kimberly one has become the standard in the United States. The federal circus now followed it just in the last month. The federal court of claims and a damage action followed and quoted extensively from your Kimberly decision, holding that that that the Lippa was not a sovereign act and therefore it can't modify the the contracts with these property owners. And therefore they have a cause of action in the federal court of claims for damages. But in this case, we have a cause of action for quiet title because Congress has specifically granted authority to the district courts to quiet title. If the government has a lien to which they're not entitled. And they said, once we tendered the final balance due on this contract. Kimberly was released from its obligation under this agreement. And so the district court entered a quiet title judgment in favor of Kimberly. At the same time, he denied their motion to intervene. They appealed from their motion to enter the denial of the motion to intervene within 10 days. I think on the 23rd of December. But they never appealed from the quiet title judgment for one hundred and fifty five days. Now, when the government's a party, all parties have 60 days to appeal. And this Court has held regularly that the that the timely filing of a notice of appeal is jurisdictional. Well, they couldn't have filed a notice of appeal. They weren't parties. Well, I don't understand that. They weren't parties. I don't understand these, the rationale, the Sintrad case, because they're saying you file a contingent springing notice of appeal and that. If the denial to intervene is overturned, then your notice of appeal is affected. But you still shouldn't. And I think it should be the rule of this circuit. What's wrong with that? Well, it should be filed within the 60 days. Otherwise, the who knows when they if the if the case is appealed, goes back to district court and another intervener comes in and they're denied and they go up to this court and this court reviews it. And then the appeal time goes on interminably. I don't quite follow that example, but I understood what Judge Easterbrook thought was a reasonable thing to do. Well, my sense is that. It seemed to me that it was that unreasonable. Well. Because as the case law recognizes, the interveners have can't can't when they were denied leave to intervene, they could not file a notice. Well, the case is also. They could not appeal the judgment. The case is also recognized that an appeal that's filed more than 60 days from the entry of the judgment, this court loses jurisdiction. Now, you have to reconcile those two lines of authority. If you can't file a notice of appeal, what difference does it make? Wouldn't the clerk just have struck a notice of appeal the same way as if it had been filed by the Oakland Raiders? Well, we filed a motion to dismiss the appeal on the ground of lack of jurisdiction. No case for controversy, which gets back to Judge Tashima's argument that the issue is moot. You haven't addressed the merits of the motion to intervene. What about the appeal from the denial of the motion to intervene? They can address that. And there is a case. And someone, one of the panelists said, well, why don't you just sue the government? Well, they they have, in fact, done that. We implemented the record with the there's a class action pending in Oregon of Goldhammer versus Veneman, which is against the secretary of agriculture in which they are litigating with who they should be litigating. Their problem is with the government. Their their argument is really with the solicitor general, because he didn't petition the United States Supreme Court for certiorari when they lost Kimberly. Anyway, by the statute of limitations and having started that action when they did. Which one in Oregon that you're talking about? I don't I don't know. I wouldn't think so. No. Well, I haven't proceeded that far. And we the one of the partners in this Kimberly was also sued over there. So we are in that action and have been mediating with the four Judge Levy just last Thursday to try and see if we can't resolve those cases over there. But what these litigants want to do, they're not. It's not that this tenant has jeopardy and in jeopardy anyway. And I really object to counsel's call. Be evicted. That's what he said. And of course, the record in this action shows that immediately after this court issued its opinion, Kimberly entered into a contract to sell this Kimberly property to a nonprofit corporation, which is in his businesses to preserve these properties and obtain subsidized housing. And it does have a subsidized housing contract with HUD, the Department of Health and Urban Development. That's section eight housing section eight housing. And so that's different than 515. Well, it's different 515. But this never has had 515 subsidy on it. It was always even though it was financed by rural housing, it was always subsidized by HUD. So nothing has changed. There is no jeopardy to this tenant. That is all this tenant is a stocking horse in order for them to try and get the issue that you raised in Kimberly one back up here to try and either get you a different panel to reverse Kimberly one and not follow the law of the case and then try and get the United States Supreme Court to take certiorari. And that's what this case is really all about. The question is, did the sole issue is if there is jurisdiction here, did the trial court abuse his discretion in letting them intervene? And so for that, you look to you have a four part test. You first it was a timely and that stage of the proceedings which they sought to intervene was after this court had established the law of the case. Now they want to go back, intervene and ask the district judge district court to reverse or not follow your decision and then take an appeal back up here and ask this court a different panel to decide Kimberly differently than it did before. And failing that, they will then want to try and petition the United States Supreme Court for certiorari, something that the solicitor general did not do because, in my opinion, he must have felt that Kimberly was the right decision. And all the other courts that since then have been following Kimberly. And it's nice to know that somebody. You got to be proud of it because usually they're trying to set it aside. The other courts and particularly the courts that are dealing with this, the Federal Court of Claims. Somebody's haranguing us for something. And all right. Following yours and citing it and you you have your Kimberly decision has become. And it's the right decision because it gets the question of can the United States government through legislation focused on contracts and modify a contract and say we're not going to live up to this contract. We're going to change the terms of it. If they could do that, this was a 50 year loan. Why couldn't they change it? Say it's 500 years and lock in forever. Well, you might have. I think what counsel says you might have a claim for breach of contract by the government for on just that basis that you change the rules on us. And you we do. You've caused this damage. And therefore, why wouldn't why wouldn't money be a sufficient adequate remedy in real property life? You're talking common law damages is never adequate when it comes to title to real property. That's basic common law. But the other thing is, is the Congress has specifically given the district court's authority to quiet title and equitable remedy. And that's the most recent expression of congressional will. It it's later than the original Tucker Act damages place. And the last reenactment of the Tucker Act, it was the same act of Congress included both the Tucker Act damages provision and the the quiet title remedy. So we're not here. It isn't a question of we have an adequate remedy of damages. We don't have common law, but we have a specific statutory Congress congressional remedy in quiet title. And that's why your decision in Kimberly. I guess I gather Kimberly one just really only impacts those. We said estimated five thousand projects before the effective date of a Lippa. Anybody who in other words, anybody, any any developer or whatever, who entered into a contract after a Lippa is stuck with having to comply. Well, of course, anyone after Lippa, their contracts are different. They don't write. Could they modify their contracts? And they're specifically a ballgame. After the effective date of a Lippa. And that's the problem. It's this was kind of a gigantic bait and switch, if you want to ask it. We got into this program because there were special tax advantages up until 1986 when Congress took away the tax advantages. And then and this is spelled out in the most recent court of claims case. And then when everybody started paying off the contracts to get out of this program because they were no longer economically viable, the government locked you in with us with the Lippa statute. And so it has the industry that likes to describe it as a gigantic bait and switch. And so that's why the most people file damage cases in the court of claims. We filed. We tendered the balance due and file quiet title. And that has become the leading case. Kimberly one has become the leading case in the industry. You can now go either way or both ways because you are damaged. Kimberly hasn't been getting any return on a seven thousand a negligible return on a seven hundred thousand dollar investment for seven years. At a 10 percent return average, that's four hundred and twenty thousand dollars that. Yes. Seven years. That's a half a million dollars that Kimberly has lost because it's locked into this government program. And one last thing about what the appellant stated that. This thing about suggesting or intimating that we might have violated a court restraining order in our settlement agreement, which is an appendix to our brief that when we settle with the government after the district court, it's a paragraph. It's a tab seven or eight of our brief giving nine the litigation settlement agreement of the appendix to our brief. That's the settlement agreement in February 27th of 2003 that we entered into with the government. And at that time, under that settlement agreement, the judgment quiet title judgment had been entered in December of 2002. The government took a protective notice of appeal. We had a very substantial attorney's fees claim against the government because of the nature of this transaction. And we we settled with the government. We waived our attorney's fees claim. They agreed to waive their appeal and they agreed to reconvey the property and which they did. They reconveyed the property shortly after the first part of March. And we were obligated under the settlement agreement to file a satisfactory judgment, which we did. Now, it's been intimated here that we violated some stay order by this court. Those occurred at this moment by clear recollection. Those can occurred long before this court entered its stay order and we were obligated to do it under the government. We would have breached our settlement agreement with the government if we had not entered the stay of execution or the set, the satisfaction of judgment after the government reconveyed the property. So we're now at the position where it's been seven years after we tended the money. We've not gotten any return on this property. And we're here litigating again the precise same issue which this court decided in Kimberly one, and which is now the accepted analysis of these government contracts in all the courts that have addressed it since Kimberly. And we request the court to accept the trial court's decision that they were too late. The law of the case had been established when they sought to intervene, and that Kimberly has been substantially prejudiced because of their late delay, and that there's now nothing that issues moot. And we ask the court to affirm the district court's order denying the right to intervene and to dismiss the appeal. So let me ask this question. In this last day order issued by the Ninth Circuit on May 7, 2003. Yes. There's a paragraph that says Appellant's motion for an OSC is granted. And Kimberly shall show cause in writing why sanctions shouldn't be imposed for violating the court's March 26 order. Remember that? Yes. Yes. You follow the response to that OSC. We did. And what was your response that all this happened before the state happened before and there was no jeopardy to these people, because what we were doing was preserving this property for these tenants and not jeopardizing the tenants. And the court denied that the motions judge denied the sanctions were denied. Sanctions were denied. Yes. Thank you. I'll try to cover a lot of ground quickly. Judge Bates said that the government agreed in the settlement agreement to reconvey the property. And respectfully, that's just not the case. Once the district court entered judgment below, the government no longer had an interest in the property. It only had the ability to appeal. All that the government could offer to do in the settlement agreement is drop its appeal. So that's why the settlement agreement doesn't moot our appeal from from the judgment under below. Was there a quiet title provision in the judgment? I can't remember. I don't recall. Judge Bates, you asked whether we could just sue the government in Boise. And I think the answer to that is Kimberly is trying to transfer the property to a third party. It's not clear to me that if Kimberly transfers to a third party that we'll have any adequate remedy under the APA suing the government. So that's our concern. That's why we want to reverse the judgment and continue litigating in this action. On the question of what the first decision of this Court decided, Judge Bates said that it held that it's not a sovereign act when the government repudiates the contract. That is true only within the meaning of the Sovereign Acts Doctrine under Winstar. It doesn't mean that it's not still an act of Congress. And that's exactly the premise that Franconia rests on. Franconia doesn't say that a LIPA wasn't effective. It said it was effective and repudiated a contract and awarded contract damages. That's exactly what we say should happen here. No doubt the government's contract with Kimberly has been breached, and no doubt Judge Bates' client should recover damages for the lost income that he describes. At least they won't get any opposition from Ms. Doe. And the last thing I'll say about how do you meet the point made by counsel that this in effect is a quiet title action to real property and damages are never considered to be an adequate remedy for possession of real property? Your Honor, Kimberly knew when it contracted the contract that it was not an adequate remedy for possession of real property. And Kimberly did not bargain for an exemption from future acts of Congress. If they'd wanted the relief that they were seeking for now, they could have bargained for it then. What they got, according to the ordinary contract principles described in Winstar, both Justice Souter and Justice Scalia quoting Judge Holmes, what they got was insurance from the government that if the government breached the contract, they could collect money damages. They did not bargain to be exempted from a future act of Congress such as ALLIPA. And the last thing I'll say is that unmistakability doctrine is a tool of contractual interpretation. The doctrine is an attempt to figure out what the contract between the parties meant. The earlier panel decision never interpreted the contract here. That's what we would have asked the district court to do, and that's what we asked this court to do. The contract between Kimberly and the government does not entitle them to the relief that they're seeking. Thank you. All right. Thank you. Thank both counsel. This case is submitted for decision. Next case on the argument calendar is Spanish Indian tribe versus the United States. Thank you.
judges: Tashima, Paez, Bea